BRIGHT et al. v. VIRGINIA & GOLD HILL WATER CO.

(District Court, D. Nevada. October 17, 1918.)

1. CORPORATIONS ⬤⟳397—AGENT OF CORPORATION.

  One is an agent, whether he is acting for a natural person or a corporation; the fact the principal is artificial not interfering with the status of the agent.

2. WITNESSES ⬤⟳144(13)—COMPETENCY—TRANSACTION WITH PERSON SINCE DECEASED.

  Under Rev. Laws Nev. § 5419, declaring no person shall be allowed to testify when the other party to the transaction is dead, one party to an

arrangement with a corporation cannot testify thereto after death of the corporate representative, for such representative was the other party to the transaction.

At Law. Action by Rose Bright and others against the Virginia & Gold Hill Water Company. On objection to testimony. Testimony excluded.

H. V. Morehouse, of Reno, Nev., for plaintiffs.
Cheney, Downer, Price & Hawkins, of Reno, Nev., for defendant.

FARRINGTON, District Judge (orally). It appears that in 1880, Mrs. Raffetto, her husband, and brother were living on the ranch under discussion. Mrs. Raffetto says she owned an interest in the property. I have not examined the record, but counsel have stated, and the statement has not been questioned, that this property, or a portion of it, was deeded to her in January, 1881, and that this transaction, in regard to which her testimony is offered, occurred something like 37 years ago. I assume that Mrs. Raffetto was interested in the property at the time, and therefore interested in the water. Mrs. Raffetto says the water in a ditch owned by the Water Company escaped and ran over the Raffetto ranch, doing a large amount of injury, and that Mr. Overton, the superintendent of the company, visited the premises, and there was some sort of an arrangement, conversation, or transaction among these four persons—Mrs. Raffetto, her husband, and her brother, on the one side, and Mr. Overton, on the other. Mr. Overton is dead. Defendant objects to the testimony of Mrs. Raffetto as to what occurred on that occasion, on the ground that, inasmuch as death has closed the lips of Mr. Overton, Mrs. Raffetto's lips also are closed.

There was a time when interested parties were not permitted to testify in law cases; their lips were closed, because they were interested. That was the common-law rule for 200 years. During that period a man accused of crime in England was not permitted to testify in his own behalf in a criminal trial. This law was altogether too drastic; hence Lord Denman's Act, and similar legislation in England, followed by like statutes in America, which permit interested parties to testify, save in certain cases. The difference in the statutes is the difference in the exception. At one time there was a federal statute regulating the matter, but that statute has been repealed, and now the national courts must conform to and follow the state legislation. It is not a question as to what is just or unjust; it is simply a question as to what the law is.

It is easy to see how the law as it is written can operate unjustly in certain cases. For instance, you and I enter into a contract; I die, and the law says you cannot yourself testify as to the terms of the contract. It does not say you cannot prove your contract; it simply says you cannot testify; it closes your mouth, because death has closed mine. It may thus operate to prevent you from establishing your claim.

[1, 2] The statute of Nevada reads as follows:

"No person shall be allowed to testify when the other party to the transaction is dead." 2 Rev. Laws Nev. § 5419.

Unquestionably the Legislature intended by that language to shut out testimony in certain cases, and it is for the court now to determine whether the statute applies to the case in hand. The statute was not always in its present form. Originally it read thus:

"All persons without exception, including parties to or those interested in the suit, except where the adverse party is dead, or where the opposite party shall be the administrator, executor or legal representative of a deceased person, may be witnesses." St. 1861, c. 103, § 340, as amended by St. 1864, c. 58.

Any person could be a witness, except where the adverse party was dead, or where the opposite party was an administrator or an executor. The Legislature evidently was not satisfied, so a few years later it adopted a statute reading as follows:

"No person shall be allowed to testify * * * when the other party to the transaction, or opposite party in the action, or the party for whose immediate benefit the action or proceeding is prosecuted or defended, is the representative of a deceased person." 1 Comp. Laws 1873, § 1440.

In this statute the controlling factor is the opposite party. If he is the representative of a deceased person, the testimony will be excluded; if he is not the representative of a deceased person, the testimony will be admitted.

While this statute was in force, the case entitled Vesey v. Benton, 13 Nev. 284, was decided. The controversy arose in this county—I presume the Benton referred to is "Doc" Benton. H. M. Vesey entered into a contract with Benton, whereby Benton was to furnish board for a number of men; in making the contract E. A. Vesey acted as agent for his brother, H. M. Vesey, who soon after died. The deceased brother was the principal in the contract; the living brother, as agent, had arranged the contract with Benton. E. A. Vesey, the agent who arranged the contract, having been appointed administrator of his brother's estate, brought an action against Benton on the contract. As the representative of a deceased person, he was allowed to testify, but Benton's testimony was excluded; he could not testify, because the opposite party to the contract was dead, and the party opposite to him in the suit was the representative of a deceased person. It was a peculiar situation. Under the plain letter of the statute, one of the men actually engaged in making the contract was permitted to testify, while the testimony of the other was excluded. The case was appealed, and the Supreme Court, speaking through Judge Hawley, criticized the statute severely, but said it was the law, and there was no escape from it; if the law was wrong, the fault was the fault of the Legislature; the court was bound to follow the statute as it was written.

Reading again the present statute, "No person shall be allowed to testify when the other party to the transaction is dead," the first question is: Was Mrs. Raffetto a party to the transaction? And the next question is: Was Mr. Overton a party to the transaction?

The Legislature undoubtedly used the term "other party to the transaction" advisedly. If it had intended "when the other party to the contract," or "the other party to the suit" is a deceased person, it certainly would have said so. The word "transaction" is more comprehensive than the word "contract." It must be given a broader interpre-

tation than would be given if the statute said "when the other party to the contract" is dead.

In this case there was a transaction, and Mrs. Raffetto was a party to it. If I understand her testimony, she was interested in the ranch at the time, owned a part of it, and therefore was interested in the water; she took an actual part in the conversation with Mr. Overton, and in arranging the contract regarding which she is asked to testify.

As to Mr. Overton, Mrs. Raffetto says he was superintendent of the company. Objection was made that this could not be so proven. If Mr. Overton was not the agent of the company, not its superintendent, it is difficult to see how he could bind the corporation; he must have had some authority to do so. He must have been a representative of the corporation; otherwise, there was no contract which could bind the company. If he was the agent of the company, then is he the other party to the transaction?

In the case to which I referred a few moments ago, Vesey v. Benton, the arrangement between Benton and the surviving brother, the agent for the dead principal, is characterized as a transaction. The court says, "The other party to the transaction is E. A. Vesey;" that is, the agent who negotiated the contract.

In Crane & Co. v. Gloster, 13 Nev. 279, Judge Beatty says:

"Under the old law, if A., by his agent, contracted with B., and his agent died, in an action on the contract after the death of the agent, B. could not have testified, because of the death of the 'other party to the transaction.'"

A man is an agent, whether he is acting for a person or for a corporation. The fact that the principal for whom he acts may be an artificial rather than a natural person does not affect his status as an agent. If, as agent, he arranges a contract for his principal, he is one of the parties to the transaction, within the meaning of the statute.

In Carroll v. United Railways of St. Louis, 157 Mo. App. 247, 137 S. W. 303, cited by defendant, there is an interpretation of a similar, but less comprehensive, statute. Doubtless, if the Supreme Court of Missouri, when passing on the question, had been obliged to apply the Nevada statute to the facts, it would have come to precisely the same conclusion it did in that case. There the statute read:

"When one of the parties to the contract, or to the cause of action, is dead, the other party to the cause of action, or to the contract, cannot testify."

In that case the transaction did not occur between the original parties to the contract. On one side was a woman who had been injured, and on the other a corporation through whose negligence the injury was supposed to have occurred. The transaction was the fact that the lawyer for the plaintiff, the injured woman, tendered certain moneys to the attorney for the company; the attorney for the company died, and the court said the lawyer for the plaintiff could not testify as to that matter; death had closed the mouth of one party to the transaction, and the law would close the mouth of the other. The word "transaction" does not occur in the Missouri statute; the term used is "parties to the contract, or to the cause of action."

Counsel puts much reliance on the decision in Burgess v. Helm, 24

Nev. 242, 51 Pac. 1025. Burgess claimed to have entered into a contract with Mrs. William McDonald for services; Mrs. McDonald died, and Mr. Helm became her administrator. Burgess brought a suit against the estate. He sought to establish the contract between himself and Mrs. McDonald, not by his own testimony, but by the testimony of third parties as to conversations with Mrs. McDonald after the contract was supposed to have been entered into, in which she made admissions as to its terms. The administrator objected to the testimony, because the third parties who were testifying to these conversations were parties to the transaction—that is, to the conversations—and Mrs. McDonald, the other party, was dead; but the court said "No," the transaction was the contract between Burgess and Mrs. McDonald, therefore Burgess could not testify, but the testimony of his witnesses was admissible.

If the rule had been construed as broadly as Mr. Helm contended for in that case, it would practically, as counsel for plaintiffs in this case suggests, make it impossible to prove a claim against a dead man. I think the decision in the Burgess Case was correct, but it does not fit this case; therefore I am constrained to sustain the objection made to the testimony of Mrs. Raffetto.

The controlling factor in this conclusion is the language of the statute itself:

"No person shall be allowed to testify when the other party to the transaction is dead."

If the Legislature had intended "the other party to the contract," it would have said so; if it had intended "the other party to the suit," it would have said so. In view of the many changes made in the act since its first adoption, we cannot assume that the last amendment was made otherwise than deliberately and advisedly.