## ONESTI v. SAMOVILLE

### No. 2654

March 9, 1925.                                    233 Pac. 846.

1. WITNESSES—WHOLESALE FURNITURE SALESMAN NOT INCOMPETENT
TO TESTIFY IN ACTION BY RETAILER AGAINST EXECUTOR.

In action by retail furniture dealer against executor, wholesale furniture salesmen, who sold goods, purchased by deceased, to retailer, *held* not incompetent to testify, under Rev. Laws, secs. 5419, 5423, as witnesses were not agents of party, within class rendered incompetent by statute to testify as to transactions with decedent, under whom a party claims.

2. WITNESSES—WIFE OF MEMBER OF PLAINTIFF PARTNERSHIP NOT
INCOMPETENT TO TESTIFY IN ACTION AGAINST EXECUTOR.

In action by retailer against executor, wife of member of plaintiff partnership *held* not incompetent to testify within Rev. Laws, secs. 5419, 5423, rendering parties incompetent to testify to transactions with deceased person, under whom other party claims.

3. WITNESSES—APPRAISEMENT FILED IN MATTER OF ESTATE PROPERLY ADMITTED IN SELLER'S ACTION FOR VALUE OF APPRAISED
GOODS.

In seller's action for value of furniture, against executor, appraisement filed in matter of estate *held* properly admitted, where appraisers testified at trial that furniture was worth less than sum at which they had appraised it.

4. EXECUTORS AND ADMINISTRATORS—INVENTORY FILED IN MATTER
OF ESTATE IMPROPERLY ADMITTED IN SELLER'S ACTION FOR
VALUE OF FURNITURE.

In action by seller for value of furniture, against executor, inventory, filed in matter of estate, *held* improperly admitted, as question was amount due, not delivery of furniture, which was admitted, and as inventory contained statement of other property than that purchased from plaintiffs.

5. EXECUTORS AND ADMINISTRATORS—FAILURE TO PROVE REGULAR
RETAIL PRICE, TO BE PAID UNDER CONTRACT FOR SALE OF FURNITURE, FATAL.

In action by seller against executor for value of furniture, failure to offer any proof of "regular retail price," the compensation provided for under contract, which was to furnish hotel, *held* fatal, where only evidence of value was price actually charged; "regular retail price" of furniture purchased for hotel being cost price, plus transportation, plus commission.

See (1, 2, 3) 40 Cyc. p. 2262, n. 53, 54; p. 2283, n. 82; p. 2289, n. 21; p. 2742, n. 36; (4, 5) 24 C. J. sec. 2182, p. 865, n. 87 (new); sec. 2183, p. 865, n. 90.

APPEAL from Second Judicial District Court, Washoe County; *Geo. A. Bartlett,* Judge.

Action by M. Samoville and C. E. Flagg, a

copartnership under the firm name of Samoville & Flagg, against John Onesti, executor of the estate of Marie Martin Onesti, deceased, and another. From a judgment for plaintiffs, and a denial of a new trial, defendants appeal. **Reversed.**

*M. B. Moore,* for Appellants:

Rev. Laws 5419 and 5423 provide what persons are excluded as witnesses. We had right to show plaintiffs were indebted to concerns which agents represented, and if such indebtedness was shown, agents could not testify as to transactions between plaintiffs and deceased. Higgs v. Hansen, 13 Nev. 356; Burgess v. Helm, 51 Pac. 1025.

American Investment Co. v. Coulter, 61 Pac. 820, holds that adverse party means any party whose interests are actually adverse, whatever capacity he appears in. Shaten v. Judd, 42 Pac. 337; 40 Cyc. 2260, 2282, 2286, 2291, 2294, 2332.

What was meant by regular retail price is matter to be construed by court in light of common usage. Price charged by firm on its books is no evidence of what is retail price. Well recognized practice is to furnish hotels, etc., on basis of wholesale cost plus transportation and other charges, plus a commission. Construction of contract which makes it reasonable and just will prevail. Stoddard v. Golden, 178 Pac. 707; Stein v. Archibald, 90 Pac. 536.

Value fixed by estate appraisers, assessor, condemnation commissioner, etc., is not binding on anyone connected with this case. 22 C. J. 178 et seq.

Defendant was not allowed to testify as to value and price of certain articles, though evidence of what article sold for in bona fide transaction is best evidence of value. 22 C. J. sec. 141.

*C. H. Burritt,* for Respondents:

Deceased selected furnishings in show rooms of wholesale dealers who sold them to plaintiffs, who in turn sold them to deceased. Neither those wholesalers nor

their salesmen are in any way interested in this litigation. Rev. Laws 5419 and 5423, therefore, do not exclude them as witnesses. Testimony will not be excluded where case is not clearly within terms of statute. 40 Cyc. 2260, 2282; Hess v. Gourley, 89 Pa. St. 195; Burgess v. Helm, 24 Nev. 242.

Wife of one of members of plaintiff copartnership was not disqualified. In order to disqualify witness, his interest must be present, direct, certain, and vested. 40 Cyc. 2280.

## OPINION

*Per Curiam*:

This action was instituted by Samoville & Flagg against John Onesti, as the executor of the estate of Marie Martin Onesti, deceased, to recover judgment in the sum of $26,557.96. Judgment was rendered in favor of the plaintiff in the sum of $20,603.96. The defendant has appealed from the judgment and order denying a motion for a new trial.

The complaint alleges the partnership of the plaintiffs and that they were at all the times mentioned in the complaint doing a furniture business in the city of Reno, Nevada; that the plaintiffs, under and by virtue of an express contract, sold and delivered to Mrs. Onesti, at Reno, Nevada, sundry goods, wares, and merchandise, of the value of $34,617.56, on account of which she had paid $8,059.60, and that there was a balance due plaintiffs of $26,557.96; and that the account has been stated between the parties in that sum. The complaint then alleges the death of Marie Martin Onesti, the making of a will by her prior to her death, the appointment of the defendant as her executor and his qualification as such, the filing of a claim by the plaintiffs and its disallowance, that plaintiffs became and were indebted to one C. W. Mapes upon a promissory note in the sum of $6,000, and that they and Mrs. Onesti executed a mortgage upon the furniture so sold to secure the payment of said note. It also alleges some other details, which need not be stated here.

The defendant filed as answer, denying certain of the

allegations of the complaint, and pleaded affirmatively a contract between plaintiffs and Mrs. Onesti, in words and figures following:

"Reno, Nevada, August 28, 1922.

"This agreement, entered into between Samoville & Flagg, parties of the first part, and Miss Marie Martin, the party of the second part, witnesseth: That the party of the first part agrees to give the party of the second part an option on the lease of the Elm Hotel. That the party of the second part will pay five hundred (500) dollars to the party of the first part for this option, and if the party of the second part is not satisfied said $500 will be returned and the option canceled; but, if accepted, this amount will be supplied to the value of the lease, namely, $6,000 (six thousand dollars).

That the party of the second part agrees to give, if accepting the lease, the furnishing of the sixty-five (65) rooms, complete, for not less than nine thousand dollars, to the party of the first part in accordance with the specifications of the party of the second part. It is mutually agreed that the prices shall be regular retail prices. It is also mutually agreed, if the owner of the property should not allow this option (and lease to be drawn) carried out, that the deposit of five hundred dollars will be returned and the party of the first part not held to this agreement, and that the lease and other arrangements be more fully drawn up and signed."

It is also alleged that on the 5th of October, 1922, Mrs. Onesti secured a lease upon the hotel mentioned in said contract, and that no other agreement was ever entered into between the parties than the one pleaded; that the plaintiffs thereafter proceeded to install in said hotel a large amount of furniture and furnishings, of a value not to exceed $18,000. The answer also alleged certain payments to have been made by Mrs. Onesti or the defendant upon the Mapes note and to the plaintiffs.

About the latter part of September or early in October, 1922, Mrs. Onesti went with Mr. Samoville to San Francisco to look at furniture. They went to the furniture exchange, where various dealers kept samples

of furniture and furnishings for the inspection of prospective purchasers, from which it is claimed selections of furniture were made by Mrs. Onesti. There is testimony to the effect that this furniture was shipped to Samoville & Flagg at Reno, and that the bulk of it was taken directly from the depot to the hotel, and there installed.

1, 2. The first error assigned and argued by appellants, to whom we will hereafter refer as defendants, is to the effect that the court erred in admitting in evidence the testimony of various salesmen, who showed the furniture at the exchange to Mr. Samoville and Mrs. Onesti, and to whom orders were given for furniture. The objection to this line of testimony is grounded upon sections 5419 and 5423, Rev. Laws, which, so far as material read:

"Section 5419. * * * No person shall be allowed to testify: 1. When the other party to the transaction is dead. 2. When the opposite party to the action, or the person for whose immediate benefit the action or proceeding is prosecuted or defended, is the representative of a deceased person, when the facts to be proven transpired before the death of such deceased person. * * * *"

"Section 5423. * * * 3. Parties or assignors of parties to an action or proceeding, or persons in whose behalf an action or proceeding is prosecuted, against an executor or administrator upon a claim or demand against the estate of a deceased person, as to any matter of fact occurring before the death of such deceased person."

In support of the contention our attention is directed to the cases of Higgs v. Hansen, 13 Nev. 356, Burgess v. Helm, 24 Nev. 242, 51 P. 1025, and some other authorities. None of the cases are in point. These salesmen were not acting for Samoville & Flagg, and in no sense of the word were they their agents, any more than they were the agents of Mrs. Onesti. They were simply the salesmen of the houses in San Francisco to which the alleged orders were given. So far as appears, these

witnesses are not interested to the slightest extent in the result of this action. It would be a ridiculous position for this court to take, should it say that such witnesses are disqualified. Furthermore, as was said by this court in Torp v. Clemons, 37 Nev. 474, 142 P. 1115:

"In excluding the testimony of the witness as to transactions between himself and a deceased person, three elements must concur and be apparent: First, the witness must belong to a class which the statute renders incompetent; second, the party against whom the testimony is to be offered must belong to a class protected by the statute; and, third, the testimony itself must be of a nature forbidden by the statute."

In 40 Cyc. 2260, in speaking of the construction of such statutes, it is said:

"But it is held that the terms of the exception will not be extended by judicial construction, nor will the testimony be excluded when the case is not clearly within the terms of the statute."

None of the witnesses belong to a class which the statute renders incompetent. The same may be said of Mrs. Nell Samoville the wife of one of the plaintiffs.

**3, 4.** It is also said that the court erred in admitting in evidence the inventory and appraisement filed in the matter of the estate. The court did not err in admitting the appraisement. Two of the appraisers who fixed a value upon the furniture received by Mrs. Onesti from the plaintiffs were called as witnesses in behalf of the defendants, and while upon the stand testified that the property which they appraised was worth, or could have been bought for a great deal less than the sums in which they had appraised it, and the prices charged by the plaintiffs. Certainly the jury had the right to consider their sworn appraisal under the circumstances for the purpose of determining the weight to be attached to their testimony. We think the inventory should not have been admitted. The answer admitted that the plaintiffs delivered to the deceased a large amount of furniture and furnishings, and it was more a question of the amount due than of the delivery of the furniture, etc. Furthermore, the inventory admittedly contained a

statement of property not purchased from the plaintiffs. Unexplained, it proved nothing, and all that it did tend to prove was practically admitted by the answer.

5.  It is next contended that there was a total failure, and no attempt on the part of the plaintiffs, to prove what was the regular retail price of the furniture in Reno at the time of its delivery to Mrs. Onesti.  In reply to this contention, counsel for respondents says in his brief:

"There is another and different contract; it was not only alleged by plaintiffs, but was proved, and its execution and delivery admitted.  This was the note and mortgage, in the preamble and body of which there is stated other and additional terms as to the price than that contained in the option agreement of August 28, 1922.  This note and mortgage were offered and admitted in evidence without objection.

"There is a condition following the much-quoted and many times repeated 'regular retail price' clause in the option agreement of August 28, 1922, that appellants' counsel have constantly ignored, reading as follows: 'It is also mutually agreed that, if the owner of the property should not allow this option (and lease to be drawn) carried out, that the deposit of five hundred dollars will be returned, and the party of the first part not held to this agreement, and that the lease and other arrangements be more fully drawn up and signed.' "

If we correctly interpret the contention of counsel for the respondents, it is to the effect that the mortgage and lease qualify the terms of the written contract quoted. We fail to find one word in those documents qualifying the contract, nor is our attention directed to any particular language tending to so qualify it.  Furthermore, it is evident that the trial court was of the same opinion, for the reason its instructions were given on the theory that the contract was still in force between the parties at the time the furniture was selected and delivered.

Being of the opinion that the original agreement to the effect that the price agreed upon was the "regular retail price," and that that provision was never modified, let us consider if the contention that there was a total

failure on the part of the plaintiffs to prove the retail price is well taken. We not only think there was a total failure to prove the regular retail price, but are further of the opinion that there was no attempt to do so. The only evidence offered by the plaintiffs, which might be contended makes such proof, was the charges made by the plaintiffs in their books. They refused to comply with the demand of the defendants for the production of the original invoices, and the court declined to order their production.

The undisputed testimony in the case is to the effect that, when furniture is bought for a hotel, such as in this instance, the method of arriving at the regular retail price is to add to the original cost price, plus transportation, a commission. In view of this undisputed testimony, we can see no way to escape reversing the judgment and order appealed from. Had there been no such testimony, we feel that the judgment would have to be reversed. It can hardly be said that mere proof of a charge made in their books by the plaintiffs would be any testimony whatever as to the "regular retail price" of the articles furnished. If such a basis could be adopted to establish the regular retail price, the purchaser might as well agree that he would pay whatever price the seller might fix; yet we know that such was not the intention of the parties to the contract in question.

While we do not say that the proof of the cost price of the furniture, plus cost of placing the same in the hotel, plus a commission, is the only method of proving the "regular retail price," we think such proof is proper to go to the jury. It is safe to assume that all retail dealers have some basis upon which they figure a profit, over and above cost, transportation, etc., and, if the plaintiffs had any such basis, it seems to us that, if there is no other way of ascertaining the regular retail price, that method is the proper one. In any event, there is no proof tending to show the "regular retail price" of the articles, and hence the judgment must be reversed.

It is so ordered.