J. L. PUETZ AND PHILLIP C. BRITTAIN, DOING BUSINESS
AS BILLINGS BLACKTOP COMPANY, A COPARTNERSHIP, PLAIN-
TIFFS AND RESPONDENTS, *v.* C. A. CARLSON AND HAZEL V.
CARLSON, HIS WIFE, DOING BUSINESS AS THE TRAILER VIL-
LAGE, DEFENDANTS AND APPELLANTS.

No. 10104.

Submitted June 7, 1961. Decided September 13, 1961.

364 P.2d 742.

374

Sandall, Moses, Cavan & Battin, Billings, for appellants. Charles Moses, Billings, argued orally.

Ralph L. Herriott and J. F. Meglen, Billings, for respondents. Ralph L. Herriott, Billings, argued orally.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

Plaintiffs as co-partners brought this action against defendants to recover for work and labor alleged to have been performed and for materials alleged to have been furnished and delivered to defendants. Verdict and judgment were in favor of plaintiffs. Defendants' motion for a new trial was denied and they have appealed from the judgment and have attempted to appeal from the order denying a new trial though appeals from such orders have been abolished. Section 93-8017.

The complaint alleges that defendants became indebted to plaintiffs for such labor and materials which were alleged to have been performed and furnished "upon the special instance and request of the defendants" in the amounts specified in the complaint aggregating $4,408.21.

The complaint alleges payments upon the account aggregating $812 leaving $3,596.21 due and unpaid.

A general demurrer was overruled and defendants filed an answer. The defendants denied any indebtedness upon an

open account and alleged that an agreement was made between the parties whereby plaintiffs were to build a trailer court for defendants for the lump sum of $6,309 and that the obligations of the parties were governed by that contract and not by an open account. They admitted the payments alleged in the complaint but deny that they were applied on the account as alleged but pursuant to their agreement.

The other material allegations of the complaint were denied. By way of affirmative defense defendants alleged that they were the owners of certain described real estate near Billings and that they had agreed to build and construct upon the property a trailer village and to operate thereon a trailer court. It is further alleged that the plaintiffs were doing business as the Billings Blacktop Company and contacted the defendants for the purpose of submitting a bid; that they did submit a bid dated the 23rd day of March, 1956, and that the bid was accepted by the defendants. It was further alleged that the work as set forth in the bid could be completed within ten days to two weeks after actual construction had commenced. Finally, it was alleged that plaintiffs commenced the construction of the trailer court but failed, refused and neglected to complete the contract according to its terms and are not entitled to recover.

The answer also contained a counter-claim. It made the same allegations as set forth in the affirmative defense and then alleged that as the result of the failure of the plaintiffs to complete the contract the defendants were obligated to complete the construction of the trailer village by employing the Midland Materials Company to complete the work for a total sum of $6,100, and in this respect claimed damages for failure of the plaintiffs to complete the contract according to its terms which should be set off against any claim asserted by the plaintiffs.

The answer also contained a cross complaint. It made the same allegations as set forth in the affirmative defense and

further alleged that three months was a reasonable time within which to complete such work, and that they were advised and informed such work could be completed within such time; that plaintiffs knew such premises were to be used as a trailer village, and that by reason of the fact such work was not completed they sustained a loss of business in the sum of $6,250, and in addition sustained a loss in depreciation of the premises by reason of the faulty workmanship of the plaintiffs. The reply denied generally the allegations contained in the pleadings of the defendants.

The evidence discloses that defendants were the owners of about three acres of land near the City of Billings; that they were interested in constructing a trailer park; that plaintiffs contacted defendants with the idea of installing asphalt paving on the contemplated park; that the park was to contain two semi-circular driveways from which trailer lots were to be constructed at an angle on both the outside and inside of the circumference on which house trailers or mobile homes could be placed; that each trailer lot was to be provided with necessary utilities; that the driving area was to be constructed of hard surfacing blacktop placed on a gravel cushion rolled with a three to five ton roller similar to road and highway construction generally; that grass was to be planted between the lots; that along the sides of the driveway two by four's were to be placed to form straight edges to serve as a divider between the blacktopped area and the portion planted to grass; and that after the sewer, water and electric lines were in place defendants requested a written bid on the blacktop. Plaintiffs submitted a bid. One of the defendants objected to the form of the bid and a second bid was thereupon made.

The only conversation regarding payment was one in which defendant Mrs. Carlson informed plaintiffs that the work would be paid for when completed. Before commencing the work plaintiff Brittain informed Mrs. Carlson that plaintiffs would not commence the work unless the defendants paid estimates

for the work as the same was being completed. Defendants agreed to do this and thereafter made three payments for portions of the work as it was completed. The work of blacktopping was started in July 1956. Prior to that plaintiffs did some grade work with a caterpillar and scoop. During that summer defendants were filling in the top soil in the area wherein grass was to be planted. In order to keep the two by four's in place and to counteract the weight of the gravel on one side of the two by four's, it was necessary that the top soil be placed to the top of the two by four's. Only a part of the ground had been thus prepared for the blacktop; that part was completed in September 1956. There was evidence that defendants advised plaintiffs that they desired no further work to be performed that year. There was a conflict in the evidence on this point but the conflict was resolved in plaintiff's favor by the jury after the issue was submitted to it under instruction numbered 9.

When plaintiffs offered in evidence their bid which specified the amount of work to be done, defendants objected on the ground that it constituted a variance from the allegations of the complaint. The objection was overruled. Several of the specifications of error are predicated upon that contention.

The main issue presented by this appeal is whether there was a fatal variance when the complaint was based upon the theory of *quantum meruit* and an express contract was proven at the trial. This involves the consideration of two separate but interrelated questions. First: Will an action in assumpsit lie in this case? Under familiar rules of substantive law, when an action is brought in assumpsit recovery is upon an implied promise, not upon the express contract. Second: Even assuming that an action in assumpsit will lie, was the failure to allege the express contract a material variance; i. e.; one which misled the defendant to his prejudice, within the meaning of section 93-3901, R.C.M.1947? Both of these questions will be handled together in the following discussion.

378

Defendants rely upon the case of Johns v. Modern Home Crafters, Inc., 134 Mont. 76, 80, 328 P.2d 641, 643, where it is stated:

"The rule is well-established that it is a fatal variance to allege an implied contract and prove an express contract. In 17 C.J.S. Contracts, § 569, p. 1204, it is said: 'Where an action is on an implied contract to recover the reasonable value of goods or services, and the proof shows a special or express contract for a stipulated price, the variance is fatal * * *' And see 41 Am. Jur., Pleading §§ 374, 375, pp. 550-551, where the converse of the above rule is stated as follows: 'If the plaintiff in his declaration or complaint relies on an express contract, he must prove it as laid, and cannot support his case by proof of an implied one, especially in the absence of an allegation of value.' "

The result reached in the Johns case is correct, but the rules of law stated therein need some amplification. The rule announced in the Johns case that it is a fatal variance to allege an implied contract and prove an express contract only applies where an action in assumpsit will not lie.

It has long been held in this state that when a party has fully performed an express contract recovery may be had upon a complaint alleging a cause of action in *quantum meruit*. Neuman v. Grant, 36 Mont. 77, 92 P. 43; De Young v. Benepe, 55 Mont. 306, 176 P. 609; Dalgarno v. Holloway, 56 Mont. 561, 186 P. 332; Daly v. Kelley, 57 Mont. 306, 187 P. 1022; Wilcox v. Newman, 58 Mont. 54, 190 P. 138.

In the latter case this court in 58 Mont. at page 56, 190 P. at page 139, said:

"There can be no question but that a party with whom an express contract has been made may sue on *quantum meruit*, and thereafter, on showing a performance of the contract, introduce the express contract to prove the reasonable value of the services rendered. In the case of Blankenship v. Decker, 34 Mont. 292, 298, 85 P. 1035, 1037, this court held that 'Upon a

complete performance of an express contract for services at a stipulated compensation, there seems to be no sound reason why a recovery may not be had upon the *quantum meruit*. Burgess v. Helm, 24 Nev. 242, 51 P. 1025; Shepard v. Mills, 173 Ill. 223, 50 N.E. 709; Fells v. Vestvali, 2 Keyes (N.Y.) 152. In such case the effect of proof of the express contract is to make the stipulated compensation the *quantum meruit* in the case.' While it is said that the statement in the Blankenship case is *obiter*, the rule is again announced in the case of Neuman v. Grant, 36 Mont. 77, 92 P. 43, and in Waite v. C. E. Shoemaker & Co., 50 Mont. 264, 146 P. 736, and recently in the case of Daly v. Kelley, 57 Mont. 306, 187 P. 1022, and in that of Dalgarno v. Holloway, 56 Mont. 561, 186 P. 332, where it is said: 'That when a party has fully performed an express contract, he may sue upon *quantum meruit*, admits of no question in this state.'

"The general rule is stated in Cyc. as follows: 'Where there is a special agreement and the plaintiff has performed on his part, the law raises the duty on the part of the defendant to pay the price agreed upon, and the plaintiff may count either on the implied *assumpsit* or on the express agreement. * * * The only effect in such a case of proof of an express contract fixing the price, is that the stipulated price becomes the *quantum meruit* in the case. It is not a question of variance, but only of the mode of proof of the allegations of the pleading.' 9 Cyc. 685. In the case of Burgess v. Helm, 24 Nev. 242, 51 P. 1025, the rule is announced as above, but closes with the statement: 'There is no reason why a recovery may not be had upon a complaint on *quantum meruit* * * * when the opposite party to the action has not been misled in his defense.'" To the same effect is Denton v. Salveson, 132 Mont. 431, 317 P.2d 1085.

In Waite v. C. E. Shoemaker & Co., 50 Mont. 264, 277, 146 P. 736, 739, this court stated:

"There are exceptions to the general rule that a failure of

full performance is conclusive of plaintiff's right to recover. These are cases in which the departures from the stipulations in the contract are not substantial and intentional, and do not affect the entire result, and the defendant has received benefits which it would be unjust to permit him to retain without paying anything. This is particularly true of building contracts. In such a case the law implies a promise on the part of the adverse party to pay what the benefit is worth, and permits recovery for it upon a *quantum meruit,* provided the defendant may recoup all damages sustained by him by reason of plaintiff's delinquency. In such cases the parties cannot rescind and stand *in statu quo,* and it is but just that compensation should be made by the adverse party for the actual benefit received."

In Smith v. Gunniss, 115 Mont. 362, 379, 144 P.2d 186, 191, this court quoted with approval from 12 Am.Jur., § 329, at page 885, as follows:

" 'One who prevents or makes impossible the performance or happening of a condition precedent upon which his liability by the terms of a contract is made to depend cannot avail himself of its non-performance. In other words, he who prevents a thing from being done shall never be permitted to avail himself of the non-performance which he himself has occasioned.' "

In McFarland v. Welch, 48 Mont. 196, 136 P. 394, this court held that recovery can be had on an implied contract where full performance of an express contract for work and labor was prevented by the acts of the defendant.

The rule is stated in 7 C.J.S. Assumpsit, Action of § 9, p. 118, as follows: "The common counts will lie where the contract has been mutually rescinded or varied, or where performance is prevented by defendant's wrongful act."

We find that there is sufficient evidence in the record to establish that full performance of the contract was prevented by the defendant. Under the authorities cited we hold that an action *in quantum meruit* will lie in this case.

■ Defendants contend that prevention of performance was not pleaded by plaintiffs and hence that evidence thereof was inadmissible. This evidence went in without objection and hence under familiar rules the pleadings will be amended to conform to proof.

■ Plaintiff's complaint was less than ideal in alleging this cause of action, but there was not a variance which misled or prejudiced the defendants.

Section 93-3901, R.C.M.1947, provides: "No variance between the allegation in a pleading and the proof is to be deemed material, unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits. * * *"

In Johns v. Modern Home Crafters, Inc., supra, the complaint alleged that two ladders were loaned to defendant "with the implied agreement that the defendants would compensate the plaintiff for the use * * * at a reasonable price". [134 Mont. 78, 328 P.2d 643.] To prove that cause of action plaintiff testified that there was an express agreement to pay plaintiff for the use of the ladders the reasonable value of $6.50 per week. This court held that there was a fatal variance.

The facts in this case are different from those in the Johns case. Here, as above noted, it is alleged that defendants became indebted to plaintiffs for labor performed and materials furnished "upon the special instance and request of the defendants". The complaint here does not negative the idea that there may have been an express contract between the parties as was the situation in the Johns case. Here defendants knew the facts upon which plaintiffs sought to recover and were in no wise misled by proof at variance with the allegations in the complaint. The pleadings and proof disclose that defendants were not taken by surprise as to the basis of plaintiffs' complaint.

The court was right in ruling that there was no variance

between the allegations of the complaint and the proof which misled the defendants.

It is necessary to discuss the converse of the situation presented by the case at bar.

In the Johns case this court quoted the following language from 41 Am.Jur.,Pleading, § 374, pp. 550, 551: " 'If the plaintiff in his declaration or complaint relies on an express contract, he must prove it as laid, and cannot support his case by proof of an implied one, especially in the absence of an allegation of value.' "

The above rule is the correct one. When an express contract is alleged it must be proved. Failure to do so is not merely a variance but it is rather a failure of proof, and recovery cannot be had on proof of an implied contract.

In the Arrow Agency v. Anderson case, 137 Mont. 494, 355 P.2d 929, this court departed from the above rule. We are firmly convinced that the result reached in the Anderson case was fair and just, but that nonetheless the rule of law applied therein is incorrect. We therefore expressly overrule any of the language in the Anderson case which is in conflict with this opinion.

Defendants contend that the court erred in not permitting the jury to view the premises. Section 93-5102 permits a view of the premises. It leaves the matter in the discretion of the trial court, and its refusal will not be reviewed by this court in the absence of a showing of an abuse of discretion. Maloney v. King, 30 Mont. 158, 76 P. 4. There was no abuse of discretion here.

Defendants have assigned error in the giving of certain instructions and in the refusal to give certain offered instructions. These assignments of error were not separately argued in the brief of appellants. Some of them present the same questions which we have already considered. We have considered these assignments of error and find no cause for interfering with the verdict or judgment.

The judgment is accordingly affirmed.

MR. CHIEF JUSTICE HARRISON and MR. JUSTICES DOYLE, ADAIR and JOHN C. HARRISON concur.